HEARD NOVEMBER TERM, 1873.

## THE STATE *vs.* HALL.

Where the charge against any of the officers enumerated in Section 29 of Chapter CXXXI of Gen. Stat., 729, is, in substance and effect, neglect of official duty " required of him by law," the indictment must be framed under that Section, and not under Section 27 of the same Chapter.

Where there is a repugnancy between two Sections of a Statute the last Section must prevail.

Where an indictment against a Probate Judge alleges neglect of official duty in a particular case conjointly with misconduct of a general character, which is punishable only under Section 27 of Chapter CXXXI, Gen. Stat., 729, it is fatally defective.

An indictment under Section 29 of Chapter CXXXI, Gen. Stat., 729, is also fatally defective if it does not lay a specific duty imposed upon the officer by law and a wilful neglect of such duty.

Where a Probate Judge sells real estate for distribution amongst heirs, an indictment against him for wilful neglect in not paying out the money cannot be sustained until an order for distribution has been obtained.

Failure to make such an order is not, it seems, the subject of indictment, but only of appeal.

BEFORE MACKEY, J., AT YORK, JULY TERM, 1873.

This was an indictment against Samuel B. Hall, late Judge of Probate of .the County of York.

The indictment charged:

"That Samuel B. Hall, late of the County and State aforesaid, on the fourth day of March, in the year of our Lord one thousand eight hundred and seventy-two, at Yorkville, in the County of· York, and State of South Carolina, was Judge of the Court of Probate, in the County of York and State aforesaid, which was then and there a judicial office, whose powers were confined to the said County of York; and the said Samuel B. Hall, as such Judge of Probate, had jurisdiction, among other things, over the administration and partition of the estates of persons deceased in the said County of York, and was empowered and entrusted in certain cases to receive moneys arising from the sales of the real estate of persons deceased in the said County, upon the trust that he would make faithful distribution of the same among the persons entitled thereto, as by the duties of his office, and in justice, he should have done. And the said Samuel B. Hall, on the day and year last aforesaid, at Yorkville aforesaid, in the County and State aforesaid, by virtue of his said office and the entrustment aforesaid, did receive and take into his possession a certain sum of money, to wit: the sum of one hundred and fifty-four 66-100 dollars, which was derived from the proceeds of the sale of the real estate of one Samuel Steele, deceased, which sum of money was properly distributable, and was paid and delivered to the said Samuel B. Hall, as Judge of the Court of Probate, in the trust that it would be distributed among Sarah Steele, Joseph N. Steele, Robert A. Steele, Martha, the wife of L. D. Poag, and Margaret, the wife of A. K. Smith, the heirs-at-law and distributees of the said Samuel Steele. And having so received the said sum of money for and on account of the persons and object aforesaid, the said Samuel B. Hall, not regarding the proper conduct of his office aforesaid and his duty in that behalf, and with the fraudulent intent to use said money for his own private purposes, in breach of his trust, then and there fraudulently and feloniously did embezzle and convert to his own use the said sum of one hundred and fifty-four 66-100 dollars, and did refuse and neglect to pay over the same to the persons above named, who were properly entitled thereto, or to Joseph A. McLean, Esq., who

was his successor in office, to whom such moneys should have been paid over by the said Samuel B. Hall, on the expiration of his own term of office, in the month of November last past, who then became entitled to receive from the said Samuel B. Hall all such moneys as had not properly been distributed among the parties entitled thereto. And so the jurors aforesaid, upon their oaths aforesaid, do say that the said Samuel B. Hall did then and there feloniously, in manner and form aforesaid, steal, take and carry away the said sum of one hundred and fifty-four 66–100 dollars, of the moneys of Sarah Steele, Joseph N. Steele, Robert A. Steele, Martha, the wife of L. D. Poag, and Margaret, the wife of A. K. Smith, the heirs-at-law and distributees of Samuel Steele, deceased, for whose use, and on whose account the same was delivered to, and taken into the possession of, the said Samuel B. Hall, and that the said Samuel B. Hall did then so misconduct himself in his office of Judge of the Court of Probate for the said County of York, contrary to the form of the Act of the General Assembly, in such cases made and provided, and against the peace and dignity of the said State aforesaid."

Evidence was given for the State, tending to show that one Samuel Steele died intestate, leaving certain real estate in York County, which had been sold by defendant, as Judge of Probate, for payment of debts, and also for distribution amongst his heirs-at-law named in the indictment; that the sale was made upon a petition filed by the administrator of the intestate; that the defendant, in March, 1872, received the money arising from the sale, and had not paid over the same to the heirs-at-law of the intestate, nor had he turned over the same to his successor in office.

No order for distribution of the fund was shown.

The defendant was found guilty, and he moved in arrest of judgment or for a new trial. The motions were overruled, and he was sentenced to pay a fine of $1,000 and be confined in jail one year.

Various exceptions were taken at the trial to the rulings of His Honor, which are sufficiently indicated by the opinion of the Court. The defendant appealed.

*Wilson, Hamilton & Hart,* for appellant.

*Brawley,* Solicitor, contra.

March 10, 1874. The opinion of the Court was delivered by

WILLARD, A. J. The indictment must be tested by Section 29 of Chap. CXXXI of the General Statutes, (p. 729,) which is as follows: "If any Clerk of the Court of Common Pleas and General Sessions, or Sheriff, or Judge of Probate, or Register of Mesne Conveyance in this State, shall wilfully fail or neglect to discharge all the duties and perform all the services which are required of him by law, in addition to his liability to the party aggrieved, he shall be liable to be indicted as for a misdemeanor, and, upon conviction thereof, shall be fined, at the discretion of the Court, not exceeding five hundred dollars."

The General Statutes, of which the Section just quoted is part, went into effect February 10th, 1872.—Gen. Stat., Chapter CXLVI, Sec. 2, p. 766. The indictment, as well as the testimony given at the trial, fixes the commission of the offense in March, 1872.

As the Circuit Court held that the indictment was supported by Section 27 of Chapter CXXXI of the General Statutes, (p. 729,) it will be necessary, before proceeding to consider it in its relations to Section 29, to point out the considerations that prevent its being sustained under Section 27.

Section 27 is as follows: "If any public officer hereafter to be elected or appointed, whose authority is limited to a single election or judicial District, shall be guilty of any official misconduct, habitual negligence, habitual drunkenness, corruption, fraud or oppression, he shall be liable to indictment, in which the privilege of traverse shall not be allowed, and, upon conviction thereof, shall be fined not exceeding one thousand dollars, and imprisoned not exceeding one year."

When the charge is, in effect and substance, neglect of any official duty imposed by law on the officers enumerated in Section 29, the indictment must be founded upon, and must conform to, that Section. This conclusion results from a comparison of the two Sections, as they are to be read together as integral parts of Chapter CXXXI.

If these two Sections could be regarded and treated as parts of a new law, taking original effect from the date when the General Statutes, as such, became operative, the construction would be without serious difficulty. The fact is, however, that Section 27 is

taken without change from the "Act for the punishment of official misconduct of District officers," passed in 1829, (5 Stat., 390,) while Section 29 was taken from the Act of 1837, (6 Stat., 577,) and amended in important particulars on its adoption as part of the General Statutes. The amendment consisted in striking out the names of certain officers then existing, but now abolished by the Constitution and laws, and inserting the name of Judge of Probate, and also changing the phraseology of the body of the Section as to a matter not important to be considered at the present time.

But whether we consider these Sections as occurring in two distinct statutes, successive in the order of time, or as parts of a single statute, a conclusion arises which will be sufficient for the purposes of the present case. It is clear that the cases embraced in Section 29, the last adopted, as it regards the class of persons enumerated under that Section, cannot be prosecuted under Section 27. The penalties imposed by the two Sections differ essentially. As they cannot be treated as cumulative, that prescribed by Section 29 must displace that prescribed by Section 27, as it regards all offenses embraced within Section 29. In this respect a repugnancy exists between them that tends to the conclusion that the Legislature, in adopting the statute, of which Section 29, in its original form, constituted a part, either regarded the case of a neglect of official duty as not embraced in Section 27, or that they deemed the punishment prescribed by Section 27 as in excess of what was called for in the class of cases to which Section 29 relates. Both of these conclusions tend to the same result, namely, an interpretation of the two Sections by which failure to perform official duties will be punished under Section 29 exclusively.

Under this view the indictment is defective in alleging, conjointly, neglect of official duty in a particular case, and misconduct of too general a character to form a subject of indictment under Section 29. This is obvious, for, under a verdict of guilty, the Court cannot know whether the penalty imposed by Section 27 or that by Section 29 is applicable to the case.

If, however, it was competent to reject as surplusage all that is stated in excess of what properly belongs to an indictment under Section 29, still the indictment would be fatally defective, for it does not lay a specific duty imposed by law, and aver its wilful neglect. Indeed, it is doubtful, on the face of the indictment, whether the duty of which neglect is alleged did not arise on a

mere trust in virtue of the acceptance of certain funds applicable to a particular purpose.

The proper mode of procedure may be illustrated by the case of an indictment under Section 46 of Chapter .XX of the General Statutes (p. 166), where it is made the duty of the Probate Judge to deposit in bank all moneys not intended for immediate distribution. To convict under Section 29 for a default under the Section just referred to, it would be necessary to set forth a case under that Section where the duty of making such deposit was absolute, and to aver its willful neglect.

It is also clear that the evidence did not support the indictment, regarding it as under Section 29. The failure of the Court to make an order of distribution is not an indictable offense, but must be corrected on appeal. There is no absolute legal duty to pay out moneys to parties independently of the existence of an order determining their rights, nor can a neglect of that character be regarded as embraced within Section 29.

It must be a clear official duty imposed by the law governing the office to constitute a case for conviction under Section 29.

The judgment below should be reversed.

*Moses*, C. J., and *Wright*, A. J., concurred.